IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HEATHER N. MOORE,

       Plaintiff,

v.

FARMERS INSURANCE EXCHANGE,

       Defendant.

Case No.  15-cv-9105-DDC-GEB

## MEMORANDUM AND ORDER

### I.     Background

Plaintiff brings this employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*  This matter comes before the court on defendant's Motion for Summary Judgment (Doc. 47).  Plaintiff filed a Response (Doc. 54) and defendant replied (Doc. 57).  For the reasons explained below, the court denies defendant's motion.

### II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party meets its initial burden, the non-moving party "'may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248-49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)).  To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id*. (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.     Uncontroverted Facts

The following facts are uncontroverted or, where controverted, are stated in the light most favorable to plaintiff as the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Robert Half International, Inc. d/b/a OfficeTeam (OfficeTeam) is a staffing service that provides temporary workers to its clients.  OfficeTeam assigned plaintiff to work temporarily for defendant at its Olathe, Kansas location.  Plaintiff's assignment began on January 27, 2014. Melissa Valenzuela served as the Division Director for OfficeTeam, and she communicated periodically with both plaintiff and defendant during plaintiff's assignment.  At defendant's office, Eric Foard was plaintiff's immediate supervisor.  Mr. Foard reported to the manager of the National Salvage department, Todd Vogel.

During her temporary assignment to defendant, plaintiff worked as a title processor in defendant's National Salvage Department.  Plaintiff's duties involved processing title work for claims where the vehicles were declared a "total loss."  Doc. 48 at 10.  Within defendant's office, claims are assigned to title processors through an electronic system called "HEART."  HEART periodically delivers claims assignments to title processors through an assignment queue. Additionally, defendant's office uses a separate diary system for keeping track of follow-up on the necessary paperwork.  Doc. 48-3 at 71 –72.  This diary is similar to an excel spreadsheet. Doc. 48-4 at 103–04.  So, when a new claim comes in, it is assigned to a specific title processor through HEART's assignment queue.  *Id.*  Then, the title processor inputs into the diary the date when the claim should be worked on.  *Id.*  Each day, title processors looks to their portion of the diary to see what action they need to take on their claims.  *Id.*

A title processor works on a claim by completing "activities."  Doc. 48-3 at 73–74.  An activity is a specific message created for a specific claim which is already assigned to a specific

employee.  Doc. 48-2 at 240.  "[A]n activity, for example, would be a new document arrival" which has arrived into the claims system.  Doc. 48-3 at 73.  The activities are also generated through HEART.  *Id.*  Title processors keep track of the activities and their due dates in the diary.  After completing the activity, the title processor changes the diary to include the new follow-up date.  Defendant establishes all follow-up dates based on the action that the activity requires.  If a date in the diary is past due, it is considered "out of compliance."  Doc. 48-3 at 72.

As a title processor, plaintiff was assigned specific claims through the HEART system.  The diary kept track of which activities were due each day on the claims assigned to her.  Doc. 48 at 10.  Once plaintiff completed an activity, she also was responsible for recording the action she had taken and assigning a new "follow-up" date for that claim in the diary.  Doc. 48 at 10.

### Early–mid April 2014

Plaintiff was performing her work very well as of April 15, 2014.  Indeed, Mr. Foard had informed Mr. Vogel that he was considering converting plaintiff from temporary worker to full-time employee.  Mr. Foard discussed the possibility of "conversion" with plaintiff, informing her that to convert from temporary to full-time employee, she needed to continue to submit to her work on time and refrain from causing problems.  Mr. Foard also informed Ms. Valenzuela at OfficeTeam that he was considering converting plaintiff to full-time, but any conversion would not occur until late April or early May and he also would need Mr. Vogel's approval.

### Plaintiff's Pregnancy

On April 16, 2014, plaintiff told Mr. Foard that she was pregnant.  She had concern that absences from work might affect her ability to convert to full-time employment.  Plaintiff asked Mr. Foard whether her pregnancy would hurt her chances.  Mr. Foard replied by saying something like, "We'll see how things are" or "We'll see how things go."  Doc. 54 at 25.  Mr.

Foard told plaintiff that he would not hold her pregnancy-related absences against her when deciding whether to convert her to full-time employment.

### *First Incident—April 21, 2014*

Five days later, on April 21, 2014, Mr. Vogel asked Mr. Foard to investigate an issue involving a late payment in Mr. Foard's department.  On April 22, 2014, Mr. Foard determined that this delay resulted from an error by another employee, Katie Stewart.  Ms. Stewart mistakenly had given plaintiff paperwork that she should have delivered to a member of the "review team."  Plaintiff worked as part of a different team—the "follow-up team."  But also, plaintiff had not reviewed the notes on the misdirected paperwork before filing it away, and so she continued to follow up on the paperwork she already had.  The errors led to a one month delay on payment of the claim.  Plaintiff does not recall making this mistake in paper work that led to a one month delay on payment of a particular claim.  Plaintiff claims Mr. Foard never discussed the incident with her.  Doc. 54 at 6.  Also on April 22, 2014, Mr. Foard informed Mr. Vogel by email that he was withdrawing his request to convert plaintiff to full-time employee.  Mr. Foard's email read:  "I am withdrawing my request to convert [plaintiff].  I think it will be best to wait and see if she has any other issues."  Doc. 48 at 12.

### *Second Incident—May 28, 2014*

On May 28, 2014, Mr. Vogel sent an email to Mr. Foard asking him to look into another incident involving one of plaintiff's claims.  Mr. Vogel's email noted that plaintiff had failed to address any of the "activities assigned to her," and that she was changing the follow-up dates in the diary without taking any necessary action "to move the file forward."  Doc. 48 at 12.  Mr. Foard reported back to Mr. Vogel in a response email.  It read:

> [Plaintiff's] lack of action on this claim was unacceptable.  She is not a candidate
> for conversion and I will increase the audits of her files to ensure that she is

5

> proactively moving files forward.  If this behavior continues or is shown to be
> prevalent for all of her work, I will end her assignment.

Doc. 48 at 13.  Plaintiff does not recall the specific claim referenced in Mr. Vogel's May 28,

2014 email, or anything about the claim.  Doc. 54 at 9.  Plaintiff admits that the incident may

have been a time where "she needed to get ahold of someone" but did not record notes in her

diary.  *Id.*

### The HEART System

On June 5, 2014, Mr. Foard sent an email to Paul Mooney, supervisor for defendant's

Salvage department in Oklahoma City.  In the email, Mr. Foard asked Mr. Mooney to check with

Rebecca Marshall, an employee who manages the HEART system, to make sure plaintiff was in

HEART's assignment queue.  Ms. Marshall did so, and she discovered that plaintiff had not been

receiving new claims assignments.  Ms. Marshall fixed the problem and plaintiff was placed in

HEART's assignment queue.

### Plaintiff's Assignment Extended

Plaintiff's temporary assignment to defendant was scheduled to end on July 27, 2014.

But, on June 30, 2014, Mr. Foard recommended to Mr. Vogel by email that defendant extend

plaintiff's temporary assignment for six more months so that Mr. Foard could monitor plaintiff's

performance.  The email read:  "We are not in a place where we can afford to lose too many

people, so I suggest we extend the assignment for now and continue to review [plaintiff's]

performance."  Doc. 54-1 at 244.  This email exchange is when Mr. Vogel learned about

plaintiff's pregnancy.  Consistent with Mr. Foard's recommendation, defendant extended

plaintiff's temporary assignment until December 26, 2014.

### *Third Incident—early July 2014*

Sometime in early July, Mr. Foard came to believe that plaintiff was "flipping" or "rolling" her diary. "Flipping" or "rolling" the diary is defendant's term for changing or advancing the due dates for follow-up without noting what, if any, action had been taken on the claims. Mr. Foard spoke with plaintiff about noting what action she had taken on a particular claim in her diary. Following this conversation, plaintiff ensured that she recorded notes in her diary.

### *Fourth Incident—mid-July 2014*

On July 11, 2014, plaintiff initiated an instant message conversation with Mr. Foard to confirm she was performing her work satisfactorily. Mr. Foard reminded plaintiff not to "flip" or "roll" the diary. Then, on July 17, 2014, Mr. Foard learned that plaintiff was late for work and had several voicemails that were still in "new" status in her inbox. Mr. Foard does not recall who told him about the voicemails or who told him that plaintiff was rolling her diary. The voicemails no longer exist. But, based on the information about the voicemails and plaintiff's diary, Mr. Foard reviewed the electronic compliance calculators. These calculators tracked each employee's activity on claims assigned to the employee. From his review of the compliance calculators, Mr. Foard concluded that plaintiff was continuing to "roll" or "flip" her diary. The same day, Mr. Foard recommended to Mr. Vogel that defendant end plaintiff's assignment as a temporary worker. Mr. Vogel approved. Mr. Foard called Ms. Valenzuela at OfficeTeam to inform her that defendant had decided to end plaintiff's temporary assignment with defendant. Defendant terminated the assignment on July 17, 2014.

Of the other employees who were in her orientation training group, plaintiff can identify non-pregnant workers who defendant did not convert to full-time employment. Plaintiff never

heard Mr. Foard or anyone else at defendant's office make negative comments about workers being pregnant.  Plaintiff filed this lawsuit alleging pregnancy discrimination against defendant on June 5, 2015.

### IV.    Defendant's Motion for Summary Judgment

Defendant asks the court to grant summary judgment against plaintiff's claim.  The Pregnancy Discrimination Act ("PDA") is a "component of Title VII that prohibits intentional discrimination in the workplace on the basis of pregnancy."  *Orr v. City of Albuquerque*, 531 F.3d 1210, 1213 (10th Cir. 2008); *see also* 42 U.S.C. § 2000e(k).  In the Tenth Circuit, "PDA claims proceed in much the same manner as other Title VII claims of disparate treatment."  *Orr*, 531 F.3d at 1214.  To prevail on a Title VII claim, "a plaintiff must show, through either direct or indirect evidence, that the discrimination complained of was intentional."  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000).  "A plaintiff who lacks direct evidence of intentional discrimination may use the burden-shifting framework" articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Id.*

Because plaintiff has come forward with no direct evidence of pregnancy discrimination, the court analyzes her claim under the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*.  This analysis permits plaintiff to rely on circumstantial evidence to prove discrimination or retaliation.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) ("The Supreme Court set forth the framework for assessing circumstantial evidence of discrimination in *McDonnell Douglas* . . . .").

This framework uses a three-step analysis.  First, plaintiff must establish a prima facie case of discrimination.  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  If the plaintiff establishes a prima facie case, the burden then shifts to the defendant, who must provide

a legitimate, nondiscriminatory reason for its adverse employment decision. *Id*. "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact . . . whether the employer's proffered reason for the challenged action is pretextual—*i.e.* unworthy of belief." *Id*.

### A.  Plaintiff's Prima Facie Case

To make a prima facie case for discrimination under the PDA, a plaintiff must establish that (1) she belonged to a protected class at the time of the alleged discrimination; (2) she was able to perform the duties to which she was assigned satisfactorily; and, (3) the alleged discrimination occurred under circumstances which "giv[e] rise to an inference of unlawful discrimination." *Giesting v. Storz Instrument Co.*, No. 95-2445-GTV, 1997 WL 94246, at *3 (D. Kan. Feb. 26, 1997); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (applying a similar three part test to determine whether plaintiff has established a prima facie case). "The prima facie stage in the *McDonnell Douglas* test is not onerous." *Orr*, 417 F.3d 1144, 1152 (10th Cir. 2005). A plaintiff need only "raise an *inference of discrimination*, not dispel the nondiscriminatory reasons subsequently proffered by the defendant." *Id*.

### 1.  Whether Plaintiff was a Member of a Protected Class

The first prong of plaintiff's prima facie case is uncontested. Plaintiff was pregnant when the alleged discrimination occurred.

### 2.  Whether Plaintiff Was Able To Perform her Duties Satisfactorily

The second prong of the prima facie case requires plaintiff to show she was able to perform her duties as a title processor satisfactorily. To satisfy the burden imposed by this second prong, a plaintiff "need only present some credible evidence" that she "possessed the basic skills necessary to perform" her duties. *Horizon*, 220 F.3d at 1194. "'[A]n employer's

proffered reason for taking an adverse action is not to be considered in assessing the sufficiency of plaintiff's prima facie case.'" *Giesting*, 1997 WL 94246, at *4 (quoting *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992)).  This is so because allowing defendant to negate plaintiff's prima facie case by articulating a legitimate reason for the adverse employment action would deny plaintiff "the opportunity to show that the reasons advanced by the defendant were pretextual." *Horizon*, 220 F.3d at 1193.

Defendant asserts that plaintiff cannot show that she was satisfactorily performing her assigned duties.  It points to four incidents as support for this assertion:  (1) the April 21, 2014 incident when plaintiff "failed to take appropriate action to follow-up on a claim assigned to her"; (2) the May 28, 2014 incident when plaintiff failed to start activities that had been assigned to her; (3) the early July 2014 incident when plaintiff was accused of "rolling" or "flipping" her diary; and (4) the mid-July 2014 incident when Mr. Foard learned that plaintiff had 26 "new" status voicemail messages and that plaintiff was continuing to "roll" or "flip" her diary.  Doc. 48 at 24.

In contrast, plaintiff asserts that she was satisfactorily performing her duties and plaintiff points to Mr. Foard's April 15, 2014 recommendation that the defendant convert plaintiff to a full-time employee as proof.  Plaintiff also supports her assertion with Mr. Foard's statements in an email to Mr. Vogel on April 15, 2014.  He wrote, "[plaintiff] is very dedicated.  She is proactive in working her claims and is very coachable."  Doc. 54 at 24.  Mr. Foard made these email statements before any of the four incidents defendant cites as support for its assertion that plaintiff was not satisfactorily performing her duties.  But, if defendant could defeat plaintiff's prima facie case by articulating the reason given for later dismissing plaintiff, it would deny plaintiff "the opportunity to show that the reasons advanced by the defendant were pretextual."

*Horizon*, 220 F.3d at 1193.  In short, because plaintiff need only present some "credible evidence" that she was able to perform her duties satisfactorily, plaintiff has established the second prong of her prima facie case.  *Id.* at 1194.

### 3. Whether Plaintiff's Alleged Discrimination Occurred under Circumstances that give Rise to an Inference of Unlawful Discrimination

The last prong of the prima facie case requires plaintiff to show that she has admissible evidence that the alleged discrimination occurred under circumstances giving rise to an inference of unlawful discrimination.  Circumstantial proof can include "'suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.'"  *Gudenkauf v. Stauffer Commc'ns, Inc.*, 922 F. Supp. 465, 471 (D. Kan. 1996) (citing *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 735 (7th Cir. 1994)).

Defendant asserts that plaintiff has adduced no admissible evidence to support this prong because plaintiff's only support is her timeline—that Mr. Foard withdrew his request to convert her to full-time employment after she told him she was pregnant.  Conversely, plaintiff asserts that an inference of unlawful discrimination is permissible *because* of the timeline.  Plaintiff asserts she "suffered two distinct adverse employment actions"—Mr. Foard rescinding his recommendation to covert her to full-time employment and later, when defendant fired her.  Both occurred after plaintiff told Mr. Foard that she was pregnant.  Because timing is relevant circumstantial evidence under the *McDonnell Douglas* analysis, the court concludes that plaintiff has established the third prong of her prima facie case.

### B. Defendant's Legitimate, Nondiscriminatory Reason for Plaintiff's Termination

Once plaintiff establishes her prima facie case, the defendant "must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the

plaintiff." *Horizon*, 220 F.3d at 1191.  "[D]efendant's burden at this stage is one of production, not one of persuasion."  *Id.*  Here, defendant has met this burden because it has articulated a legitimate, nondiscriminatory reason for plaintiff's termination.  Defendant asserts it terminated plaintiff's temporary assignment because of "plaintiff's ongoing issues of poor and deficient performance of her assigned duties."  Doc. 48 at 28.  Defendant relies specifically on four incidents to establish plaintiff's alleged poor and deficient performance.  *See* Doc. 48 at 24 (describing the four incidents where plaintiff allegedly failed to perform the duties assigned to her).  Defendant thus has carried its burden of production and shifted the burden back to plaintiff to show that defendant's explanation was merely pretext contrived to hide an illegal discriminatory motive.  *Horizon*, 220 F.3d at 1191.

## C.  Pretext

"If the defendant is able to articulate a facially nondiscriminatory reason for the adverse employment action, the plaintiff can avoid summary judgment only if she can show that her 'pregnancy was a determinative factor in the defendant's employment decision[s], or show the defendant's explanation for its action was merely pretext.'"  *Id.* at 1191–92 (citing *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148–49 (10th Cir. 1999)).  "A plaintiff establishes pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  *Id.* (internal quotation marks omitted).

A plaintiff may go about establishing pretext in several ways:  (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an

unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. *Kendrick*, 220 F.3d at 1230; *see also Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119–22 (10th Cir. 2007). And, though the court considers evidence of temporal proximity in plaintiff's prima facie case, "in analyzing pretext . . . temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext." *Proctor*, 502 F.3d at 1213.

When an employer offers multiple justifications for firing an employee, "as a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). But, the Tenth Circuit has recognized that "when the plaintiff casts substantial doubt on many of the employer's multiple reasons, the jury could reasonably find the employer lacks credibility." *Id.* And, there may be cases where the "multiple grounds offered by the defendant . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff may [prevail]." *Id.*

Without evidence that defendant acted contrary to a written or unwritten company policy when it made its adverse employment decisions affecting her, plaintiff must establish a genuine issue of fact about whether defendant's stated reason for the decision was false. *See Kendrick*, 220 F.3d at 1230. Here, defendant's stated reason for terminating plaintiff's assignment was plaintiff's "ongoing issues of poor and deficient performance of her assigned duties." Doc. 48 at 28. And defendant relies specifically on four incidents to support its allegation that plaintiff was no longer performing her duties satisfactorily. The court has considered each of the four incidents defendant describes and concludes that a reasonable jury could find that three of the incidents defendant cites were merely pretextual. The court addresses each incident below.

### 1.  The First Incident: April 21, 2014

Plaintiff asserts that she has adduced admissible evidence that would permit a reasonable jury to find that the first incident cited by defendant is unworthy of belief.  Defendant claims that plaintiff failed to take appropriate action to follow-up on claim paperwork that was assigned to her, resulting in a month-long delay in one claim's payment.  Trying to establish pretext, plaintiff relies on timing, pointing out that the incident occurred "[l]ess than one week after [Mr. Foard learned] of [plaintiff's] pregnancy."  Doc. 54 at 41.  And, according to plaintiff, Mr. Foard investigated an error in her department and concluded that plaintiff was responsible for what was "another employee's error."  Doc. 54 at 41.  Plaintiff claims that she was given the paperwork in error and that her co-worker should have given the paperwork to a member of the review team.  Because plaintiff was a member of the follow up team, plaintiff asserts that she was performing her assigned duty when she "continued to follow up" on the paperwork instead of reviewing it.  *Id.*

But, as defendant points out in its Reply, plaintiff is merely "engaging in a game of wordsmithing."  Doc. 57 at 45.  Plaintiff's argument fails to establish pretext for two reasons.  First, the portion of the summary judgment record that plaintiff cites to support the proposition that plaintiff was performing her duties will not, in fact, support it.  *See* Doc. 54 at 41 (citing plaintiff's statements of fact 25, 27 and Foard's Dep. Doc. 54-1 at 55–57).  Indeed, Mr. Foard testified in his deposition that plaintiff "did not read the notes that were put into the file and *continued to follow up on the paperwork we already had*, resulting in a delay of payment for one month."  Doc. 54-1 at 56.  Second, nothing in the summary judgment record suggests any inconsistencies or contradictions in defendant's first cited reason for terminating plaintiff.  Defendant asserts plaintiff "should have read the notes and handled the paperwork when she

received it." Doc. 48 at 12. But when she didn't review the notes, her error led to a one month delay. Mr. Foard informed his supervisor that he wanted to withdraw his request to convert plaintiff to full-time employment and "wait and see if she has any other issues." Doc. 48 at 12. Later, defendant concluded that plaintiff had other issues and she was fired.

In sum, the summary judgment record reveals no inconsistencies or contradictions in defendant's first reason for firing plaintiff. So, plaintiff relies solely on the timing between informing Mr. Foard of her pregnancy and his decision to withdraw his request to convert her to full-time employment to establish pretext. Our Circuit has made it clear: "temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 (10th Cir. 2007). Thus, plaintiff has established no basis for a jury to find that defendant contrived this incident as a pretext to hide its discriminatory motive.

### 2.  Plaintiff's Second Incident: May 28, 2014

Plaintiff next asserts she has adduced admissible evidence that would permit a reasonable jury to find that that defendant's second cited incident is unworthy of belief. Defendant has asserted that on May 28, 2014, Mr. Vogel emailed Mr. Foard about plaintiff's failure to take action on some of the activities assigned to her. Defendant asserts that plaintiff merely changed the diary date on the file without taking any action to move the file forward. According to plaintiff, a jury properly could find this reason is pretextual for two reasons. First, plaintiff asserts that she was not entered into the HEART system correctly and that this affected her ability to receive the activities that were supposed to be assigned to her. Second, plaintiff asserts that it was acceptable in some instances to move her diary date forward without taking any action on a claim. As an example, plaintiff points to situations where she and other title processors

couldn't reach the customer because paperwork had not arrived, or where she was waiting on information from the salvage yard.  Doc. 54 at 42.

Defendant contends that plaintiff has not adduced admissible evidence to establish a basis for a jury to find defendant's second cited incident is pretextual.  First, defendant asserts that the HEART system handles claim assignments and activities assignments separately.  In other words, defendant contends that whether plaintiff was enrolled correctly in the HEART system's assignment queue did not affect whether plaintiff received activities.  Second, defendant asserts that Mr. Vogel noticed that plaintiff failed to take action with respect to an activity she already had been assigned.  Or, in other words, defendant asserts that even if plaintiff wasn't receiving new activities, it does not excuse her failure to take action on an activity she had already received.  Defendant states that it is uncontroverted for the purpose of summary judgment that there were instances where plaintiff was permitted to move her diary date forward without taking action on the claim.  Doc. 57 at 31.

Plaintiff has asserted admissible evidence from which a reasonable jury could conclude that defendant's second cited incident is pretextual.  A reasonable jury could believe defendant's testimony that plaintiff was "rolling" or "flipping" her diary.  Conversely, a reasonable jury could believe plaintiff's testimony this was an incident where plaintiff was permitted to move the date forward without taking any action on the claim.  And, with regard to the HEART system, defendant cites to Mr. Vogel's deposition where he testified that the assignment queue had nothing to do with activities.  Doc. 48-3 at 20.  But, plaintiff cites to Mr. Ford's deposition where he testified that he "cannot say it is not possible" that the error with plaintiff's placement in the HEART assignment queue explained plaintiff's failure referenced in Mr. Vogel's May 28, 2014 email.  Doc. 54-1 at 63.  Without more evidence, the summary judgment record establishes two

explanations for the May 28, 2014 incident:  plaintiff's explanation and defendant's explanation.  And, a reasonable jury could believe either.  A genuine question of material fact exists, and the court may not decide the question as a matter of law.  Thus, plaintiff has established a basis to find that defendant's second cited incident was pretextual.

### 3.  Plaintiff's Third Incident: Early July 2014

Plaintiff next asserts that she has adduced admissible evidence that would permit a reasonable jury to find that that defendant's third cited incident is unworthy of belief.  Two weeks before plaintiff's termination, Mr. Foard spoke with plaintiff about "flipping" or "rolling" her diary.  Plaintiff asserts that this is pretext because after that conversation she ensured that she handled claims in her diary properly, and even initiated an instant message conversation with Mr. Foard to verify that her work was satisfactory.  Doc. 54 at 43.

Defendant correctly points out that nothing in the record reveals that plaintiff was actually performing her work satisfactorily—just that plaintiff believed her work was satisfactory and sought to verify as much.  Doc. 57 at 48–49.  But, defendant's third cited incident is "intertwined" with defendant's second cited incident—that plaintiff was continuing to "roll" or "flip" her diary.  And plaintiff asserts that she was not "rolling" or "flipping" her diary.  Doc. 54-3 at 41–42.  As discussed above, a reasonable jury could believe defendant's testimony that plaintiff was "flipping" her diary.  Conversely, a reasonable jury could believe plaintiff's testimony that she was not "flipping" her diary.  So, a genuine question of material fact persists, and the court may not decide the question as a matter of law.  Thus, plaintiff has established a basis to find that defendant's third cited incident was pretextual.

### 4.  Plaintiff's Fourth Incident: Mid-July 2014

Plaintiff next asserts that she has adduced admissible evidence that would permit a reasonable jury to find that that defendant's fourth cited incident is unworthy of belief. Defendant alleges that on July 17, 2014, Mr. Foard learned that plaintiff had 26 "new" status voicemails and was continuing to "roll" her diary.  Though defendant asserts that plaintiff had 26 unaddressed voicemails, defendant's fourth cited incidence is intertwined with its second and third cited incidence—that plaintiff was continuing to "roll" or "flip" her diary.  And whether plaintiff was "rolling" or "flipping" her diary is a genuine issue of material fact that the court may not decide as a matter of law.

Taking all four incidents together, plaintiff has cast sufficient doubt on defendant's reason for firing her so that a reasonable jury could find that defendant's stated reason is merely pretext.  Defendant has not shown that any one incident would have been reason enough to terminate plaintiff's assignment.  Rather, defendant's reason for terminating plaintiff was "plaintiff's ongoing issues of poor and deficient performance of her assigned duties," and defendant relies on all four incidents for its justification.  But, the incidents are intertwined—in three of defendant's four cited incidents defendant alleges that plaintiff was "rolling" or "flipping" her diary.  And, plaintiff has established a genuine issue of fact whether plaintiff was "rolling" her diary or simply moving the date forward when it would have been permissible.  So, while there may be multiple grounds for terminating plaintiff offered by defendant, they are so intertwined that a reasonable jury could find that the "pretextual character of one of them" casts substantial doubt on all of them.  *Tyler*, 232 F.3d at 814.  A reasonable jury could find the defendant lacks credibility.  Thus, a reasonable jury could find that defendant's reason was merely pretext and the court is precluded from granting summary judgment.

### 5. The "Same Actor" Argument

Defendant asserts that Mr. Foard and Mr. Vogel's extension of plaintiff's assignment as a temporary worker—even beyond the anticipated birth of her child—before deciding to fire her creates a strong inference that its stated reason for firing her is not pretextual.  In support of its argument, defendant relies on the "same actor inference" recognized in *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177 (10th Cir. 2006).

The "same actor inference" arises when an "employee was hired and fired by the same person within a relatively short time span."  *Antonio*, 458 F.3d at 1183.  If the employee was hired and fired by the same person, "there is a strong inference that the employer's stated reason for acting against the employee is not pretextual."  *Id*; *see also Olson v. Shawnee Cnty Bd. of Commr's*, 7 F. Supp. 3d 1162, 1202 (D. Kan. 2014) (applying the "same actor" analysis in an employment dispute where a favorable employment decision was followed by a decision to terminate, and not strictly a hire/fire scenario).  But, evidence of pretext can dispel the same actor inference.  *Antonio*, 458 F.3d 1117.  And, as discussed above, a reasonable jury could find that defendant's reason for terminating plaintiff's assignment was pretextual.  Thus, the "same actor" inference does not dictate summary judgment.

### V. Conclusion

Genuine issues of material fact persist and the summary judgment facts, when viewed in the light most favorable to plaintiff, preclude summary judgment.  The court thus denies defendant's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 47) is denied.

**IT IS SO ORDERED.**

Dated this 7th day of October, 2016, at Topeka, Kansas.

s/ Daniel D. Crabtree_____
Daniel D. Crabtree
United States District Judge